# United States Court of Appeals

### For the Eighth Circuit

_____

No. 19-1096

_____

Diane Miller

*Plaintiff - Appellant*

v.

Hartford Life & Accident Insurance Company, also known as Hartford

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 26, 2019
Filed: December 16, 2019

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Following the termination of disability benefits under a long-term disability plan governed by the Employee Retirement Income Security Act (ERISA), plaintiff Diane Miller initiated this action against plan administrator Hartford Life & Accident

Insurance Company. The district court[1] dismissed Miller's complaint with prejudice, concluding that substantial evidence supported Hartford's decision to terminate benefits based on exhaustion of mental illness benefits and the lack of a disabling physical condition. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Miller was an employee of Integris Health, where she worked as a Medical Billing Specialist. Through her employment, Miller was covered by a long-term disability benefits plan, which was funded by a Hartford-issued group insurance policy for Integris. On April 30, 2012, Miller ceased working and initiated claims for long-term disability benefits under the plan and Social Security disability benefits based on depression and non-specific psychosis. In October 2012, the Social Security Administration approved Miller's claim, and in November 2013, Hartford approved Miller's claim, effective as of November 11, 2012. Hartford's approval of benefits was based on evidence of Miller's mental illness; Hartford did not find any support for a disability due to a physical impairment at that time. Under the plan, benefits based on mental illness were limited to a maximum of 12 months. Hartford determined that Miller had received the 12-month benefit maximum as of November 10, 2013, and terminated Miller's benefits as of that date.

In May 2014, Miller appealed Hartford's decision, asserting that her mental illness was secondary to a physical impairment and that she was thus entitled to benefits for a physical disability. After an additional review of medical records, including independent medical reviews, Hartford determined that Miller suffered from a disabling physical condition. Hartford's determination was primarily based on the physical restrictions identified by one reviewing physician, who concluded that

---

[1]The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.

Miller did not have the capacity to do sedentary work. Hartford reminded Miller that she was obligated to continue to submit evidence of her disabling physical condition to continue to receive benefits.

Nearly a year later, Hartford learned that the only treatment Miller was receiving was from a psychiatrist. Hartford requested that Miller submit information about her claimed physical disability, reminding her that she had received all of the available mental illness benefits. The information Miller provided from her treating psychiatrist stated that Miller had little to no ability to work because of her mental illness and noted that it was not known whether Miller's limitations were the result of a psychiatric or physical condition. Hartford then scheduled an independent medical evaluation. After examining Miller, the independent examining physician concluded that Miller suffered from Major Depressive Disorder with psychosis and noted that Miller's treating psychiatrist had previously indicated that Miller's mental illness was secondary to or exacerbated by a thyroid condition. The examining physician determined that Miller had no physical impairment that precluded her from engaging in full-time work, but could not opine as to whether her mental illness was due to a physical or psychological condition. He did acknowledge, however, that a possible link existed between thyroid disorders and psychotic episodes.

Based on the lack of clarity regarding Miller's mental illness, a case manager recommended an independent psychiatric review. Dr. Taral R. Sharma, a board-certified psychiatrist, reviewed the records and spoke with Miller's treating psychiatrist, who noted improvement in Miller's mental illness. Dr. Sharma concluded that Miller suffered from no mental illness that required restrictions or limitations or prevented her from maintaining full-time work. A vocational manager later opined that, based on the functional capabilities identified by the independent examining physician, there were numerous jobs that Miller could perform.

On October 1, 2016, Hartford notified Miller that her benefits were being terminated as of that date because she no longer satisfied the policy definition of disabled. Hartford again noted that Miller's only potential basis for receiving benefits was physical disability because she had exhausted the mental illness benefits. Despite the exhaustion of these benefits, Hartford also determined that Miller's mental illness no longer precluded her from working, noting that Miller's own treating psychiatrist opined that she should consider returning to work.

Miller then initiated an internal appeal to Hartford, arguing that Hartford erroneously denied benefits, specifically noting that her anti-psychotic medications cause her to suffer from side effects such as blurred vision, tremors, muscle stiffness, and fatigue. Miller also asserted that when her psychotic episodes occurred, she could not work for a period of two to three weeks. Miller did not raise any challenge to Hartford's discussion of the lack of evidence of a disabling physical impairment. Based on Miller's argument regarding the side effects of her medications, Hartford obtained an additional review from Dr. Sharma. Dr. Sharma again communicated with Miller's treating psychiatrist who offered additional information about Miller's psychotic episodes and the effects of medications Miller took during these periods. Dr. Sharma ultimately concluded that the medical records did not support Miller's inability to work during her psychotic episodes and that the evidence did not show that Miller suffered from an impairing mental illness that precluded her from working after September 29, 2016. Hartford notified Miller that it was denying her appeal and upholding the termination of benefits. Miller then initiated this action, seeking reinstatement of her benefits. Hartford opposed Miller's request for reinstatement of benefits and sought judgment on the administrative record. The district court granted judgment in favor of Hartford and dismissed Miller's complaint, concluding that substantial evidence supported Hartford's determination that Miller no longer qualified for benefits. This appeal follows.

II.

"We review the district court's adjudication of [an ERISA] claim de novo, applying the same standard of review to the plan administrator's decision as the district court." Johnston v. Prudential Ins. Co. of Am., 916 F.3d 712, 714 (8th Cir. 2019) (alteration in original) (quoting McClelland v. Life Ins. Co. of N. Am., 679 F.3d 755, 759 (8th Cir. 2012)). "Where an ERISA plan grants the administrator discretion to determine eligibility for benefits and to interpret the plan's terms, courts must apply a deferential abuse-of-discretion standard of review." Green v. Union Sec. Ins. Co., 646 F.3d 1042, 1050 (8th Cir. 2011).[2] "However, when a conflict of interest exists because the plan administrator is both the decision-maker and the insurer, we take that conflict into account and give it some weight in the abuse-of-discretion calculation." Nichols v. Unicare Life & Health Ins. Co., 739 F.3d 1176, 1181 (8th Cir. 2014) (internal quotation marks omitted). Under this standard, "we will reverse the plan administrator's decision only if it is arbitrary and capricious. To determine whether a plan administrator's decision was arbitrary and capricious, we ask whether the decision to deny . . . benefits was supported by substantial evidence, meaning more than a scintilla but less than a preponderance." Midgett v. Washington Grp. Int'l Long Term Disability Plan, 561 F.3d 887, 896-97 (8th Cir.

_____

[2]Miller urges the Court to apply a de novo standard of review based on Hartford's alleged failure to "determine the claim adequately," to obtain proper evidence of her changed condition, to measure Miller's disability by plan criteria, and to engage in a meaningful dialogue with Miller. To alter the abuse-of-discretion standard of review, a plan administrator must have committed a procedural irregularity so significant that it "rise[s] to the level of a serious breach of the plan trustee's fiduciary duty to the plan beneficiary" and "leave[s] the court with serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." Waldoch v. Medtronic, Inc., 757 F.3d 822, 830-31 (8th Cir. 2014), as corrected (July 15, 2014) (internal quotation marks omitted). Having reviewed the record, we see no procedural irregularity that would mandate a different standard of review.

2009) (alteration in original) (internal citations and quotation marks omitted). Where the plan administrator's decision "is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made." Id. at 897 (internal quotation marks omitted). "[A] decision is reasonable if a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision." Id. (internal quotation marks omitted).

Miller argues that the district court's dismissal of her complaint was erroneous for several reasons, including that there was insufficient evidence of improvement in her condition and that Hartford failed to consider the potential medication side effects and the future risk of additional psychotic episodes. But each of Miller's arguments ignores the primary reason for Hartford's termination of benefits: the record medical evidence did not support a finding of a physical disability. While Hartford engaged in an analysis of whether Miller continued to suffer from a disabling mental illness, this inquiry was irrelevant because Miller had exhausted her mental illness benefits. As these arguments relate to Miller's mental illness, they do not form a basis to conclude Hartford erred in terminating benefits based on the absence of a physical disability.

Miller specifically challenges Dr. Sharma's opinion, and argues that Hartford erroneously based its decision to terminate benefits on Dr. Sharma's opinion alone. But Dr. Sharma's opinion relates only to Miller's mental illness. Although Miller asserts in her brief that she suffers from psychotic episodes due to an autoimmune thyroid disorder, the medical evidence contains no record of treatment for such a disorder since at least 2015; at best, the record recognizes the existence of a potential link between thyroid disorders and psychiatric symptoms. Substantial evidence thus supports Hartford's conclusion that Miller does not suffer from mental illness as a result of a physical condition. To the extent that Miller challenges Hartford's reliance on the opinions of Dr. Sharma and other examining and reviewing physicians over

the opinions of her treating psychiatrist, it is not an abuse of the administrator's discretion to rely on the opinions of reviewing physicians over conflicting opinions of treating physicians "unless the record does not support the denial." Dillard's Inc. v. Liberty Life Assurance Co. of Boston, 456 F.3d 894, 899-900 (8th Cir. 2006).

Miller also asserts that Hartford's decision was not supported by the plan language and that she was not afforded a full and fair review of her claim. Miller first argues that Hartford did not follow the plan language regarding the requirements for determining when a disability ceases. Although Miller frames this argument as one involving Hartford's obligations under the plan, it is really a challenge to the substantive determination Hartford made to terminate benefits. Miller alleges only that there was not sufficient evidence that she was capable of performing work at the requisite level, not that Hartford abandoned its obligations under the plan or reached a conclusion that departed from the plan's provisions or definitions. The medical record provides substantial evidence for Hartford's determination that Miller was capable of full-time work. Nothing in the record suggests that Hartford's decision was inconsistent with the plan language.

Miller next asserts that she was not afforded a full and fair review of her claim as required by the plan language because Hartford communicated with Miller's psychiatrist without notifying her and failed to consider the side effects of medications prescribed to treat Miller's mental illness. "ERISA's notice provision requires that every employee benefit plan provide adequate notice in writing of a claim denial and afford a reasonable opportunity for a full and fair review of each denial." DuMond v. Centex Corp., 172 F.3d 618, 622 (8th Cir. 1999). This requirement "provide[s] claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts." Id. The record reveals that Hartford provided a reasonable opportunity for review of the denial of Miller's claim. It engaged in a detailed and lengthy review process, which included consideration of voluminous medical records and opinions of treating, examining, and

reviewing physicians, and clearly notified Miller of the reasons for termination of benefits. Miller's claim of one communication with a physician of which she was not notified, even if true, did not deprive her of the necessary information to adequately prepare for further review. And, as to Miller's assertion that Hartford did not consider the side effects of her medications, Hartford engaged in further review by requesting that Dr. Sharma submit another report directly addressing this issue. Further, as discussed above, this additional step was unnecessary in the absence of an underlying physical disability. Hartford more than satisfied its obligation to engage in a full and fair review of Miller's claim.

In essence, Miller's arguments largely amount to no more than a request for this court to substitute its judgment for that of Hartford's. This is inconsistent with our role as a reviewing court, where we are tasked with determining only whether Hartford's decision was supported by substantial evidence. Rittenhouse v. United Health Grp. Long Term Disability Ins. Plan, 476 F.3d 626, 632 (8th Cir. 2007) (explaining that, where a decision is supported by the record, a court "may not substitute its own judgment" for that of the plan administrator). Hartford engaged in a meaningful review of Miller's claim as it related to her complaints of both a physical disability and a disabling mental illness, despite Miller's exhaustion of benefits based on mental illness alone. Finding no disabling physical condition or mental illness based on the medical evidence and the opinions of treating, examining, and reviewing physicians, Hartford terminated benefits. Substantial evidence supported this determination; Hartford thus did not abuse its discretion in terminating Miller's benefits.

III.

For the foregoing reasons, we affirm.

_____